IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GENERAL NUTRITION CORPORATION, | ) ) ) ) ) ) ) ) ) ) |
| Plaintiff, | |
| v. | |
| GARDERE WYNNE SEWELL, LLP., | |
| Defendant. | |

2:08-cv-831

## MEMORANDUM ORDER

Pending now before the Court is the MOTION FOR RECONSIDERATION (Document No. 28), with brief in support, filed by Defendant Gardere Wynne Sewell, LLP ("Gardere"). Plaintiff filed a memorandum of law in opposition to the motion (Document No. 33). On September 15, 2008, the Court entertained oral argument on the motion and it is ripe for disposition.[1]

Standard of Review

Although the pending motion is styled as a motion for reconsideration, the Court will consider de novo its initial decision on August 20, 2008 to deny Defendant's Motion to Dismiss. In its effort to issue a decision in advance of the status conference scheduled for the next day, the

---

[1] Defendant's MOTION TO COMPEL (Document No. 34), which seeks production of the settlement agreement executed by Plaintiff and Franklin Publications, is **DENIED AS MOOT** in light of Plaintiff's representation that the document would be produced on September 15, 2008 as part of the initial disclosures required by Fed. R. Civ. P. 26. On September 12, 2008, Defendant filed a "Supplementation to Motion for Reconsideration" to submit certain emails (Document No. 36). This document was mistakenly filed or construed as a "Supplemental Motion for Reconsideration." The "motion" at Document No. 36 is terminated.

Court did not give consideration to the arguments made in Defendant's reply brief, which was also filed on August 20, 2008. Accordingly, at the conference, the Court granted Defendant leave to file the instant Motion for Reconsideration.

The Court reiterates the standard for evaluating motions to dismiss as set forth in its Memorandum Order of August 20, 2008. It bears repeating that "notice pleading" pursuant to Rule 8(a)(2) remains intact. A plaintiff must make a "showing" of entitlement to relief, and give the defendant fair notice of its claim and the grounds upon which it rests. The complaint must contain enough factual matter (taken as true) to raise a reasonable expectation that discovery will reveal evidence of all the necessary elements of Plaintiff's claim(s). The Court notes that the complaint in this case was filed by Plaintiff in the Court of Common Pleas of Allegheny County, Pennsylvania (a fact-pleading jurisdiction) and removed to this Court by Defendant, such that it was not drafted with federal pleading standards in mind.

Legal Analysis

The gravamen of this case is a claim that Gardere provided improper legal advice to Plaintiff General Nutrition Corporation ("GNC")[2] as to the consequences of terminating contracts with Franklin Publications, Inc. ("Franklin") for the production, purchase and sale of two magazines. Acting on Gardere's allegedly faulty advice, GNC terminated the contracts in the expectation that Franklin's damages, if any, would be limited under the Uniform Commercial Code (UCC) to $1-3 million and that Franklin would be precluded from recovering its lost profits generally estimated at approximately $34.5 million. Franklin filed suit in the United States

---

[2]The Court is aware that the acronym "GNC" has been used to describe various distinct corporate entities. *See* Memorandum Order dated August 12, 2008 (denying Motion to Compel arbitration because the applicable contract was executed by a separate corporation).

District Court for the Southern District of Ohio (the "Ohio court") and Gardere defended the litigation by contending that the contract involved a sale of goods which was governed by the UCC, which did not permit recovery of consequential damages. On July 13, 2007, the Ohio court ruled on summary judgment that the contract predominantly involved the sale of services, such that the UCC did not apply to limit Franklin's damages. After this adverse development, GNC fired Gardere, hired replacement counsel, and paid a substantial sum to Franklin to settle the case. Plaintiff asserts claims against Gardere for negligence, breach of contract, and breach of fiduciary duty. Gardere asserts a number of arguments, which will be addressed seriatim.

1. Judgment Rule

Initially, Gardere contends that GNC's claims are barred by what it calls the "judgment rule." In essence, the "judgment rule" provides that lawyers are not required to be infallible in their predictions of how a court will decide a matter. Defendant contends that the Court can rule in its favor at the Motion to Dismiss stage of this litigation because the decision in the Ohio court recognized that there was some basis for the position taken and espoused by Gardere. The Court disagrees with Defendant.

As set forth in its initial Memorandum Order, in *Collas v. Garnick*, 624 A.2d 117, 120 (Pa. Super. 1993) (citations omitted), the Court explained:

> Although a lawyer is not expected to be infallible, he or she is expected to conduct that measure of research sufficient to allow the client to make an informed decision. In order for a lawyer to advise a client adequately, he or she is obligated to scrutinize any contract which the client is to execute, and thereafter must disclose to the client the full import of the instrument and any possible consequences which might arise therefrom. The lawyer, moreover, must be familiar with well settled principles of law and the rules of practice which are of frequent application in the ordinary business of the profession.

3

Thus, in order to prevail pursuant to the "judgment rule," Defendant must establish that it enabled GNC to make an informed judgment based upon Gardere having conducted sufficient research, properly scrutinized the contract, and being familiar with the applicable legal principles (including, in this case, whether the contract involved a sale of goods and/or services). The complaint properly pleads that Gardere breached this standard in numerous respects, for example, by assigning labor and employment attorneys to a contract case and by conducting inadequate factual and legal research. Complaint ¶ 45. These issues are fact-intensive and the discovery process must be engaged to fully develop the record evidence before the application of the "judgment rule" may be determined, possibly at the summary judgment stage.

 2. Causation – Settlement of the Franklin Lawsuit

Gardere also contends that the complaint fails to plead causation. Defendant makes a sophisticated, multi-pronged argument. Gardere argues that GNC's claims are barred because it settled the lawsuit with Franklin. Gardere relies on the "second rationale" articulated in *Muhammad v. Strassburger, McKenna, Messer, Shilobod & Gutnick*, 587 A.2d 1346, 1352 n. 13 (Pa. 1991) (involving a *plaintiff* who settled an underlying case), for the proposition that settlement of the underlying case renders the harm too speculative and amounts to second-guessing of counsel.

The Court cannot agree. In *Wassall v. DeCaro*, 91 F.3d 443 (3d Cir. 1996), the United States Court of Appeals for the Third Circuit, in reversing a district court, instructed that

*Muhammad* was to be construed narrowly.³ In particular, *Wassall* explained that legal malpractice actions are not barred: "(1) if the attorney sued did not settle the case; (2) if the malpractice plaintiff was forced to settle because of the attorney's negligence; or (3) if the malpractice plaintiff does not try to question, retrospectively, the amount of the settlement the attorney negotiated." *Id.* at 447 (citations omitted). Thus, in *Wassall*, the Court held that even assuming the plaintiffs had settled the underlying action, they would be allowed to prosecute the malpractice case. *Id.* The *Wassall* Court cited *White v. Kreithen*, 644 A.2d 1262 (Pa. Super. 1996) (distinguishing *Muhammad*), for the proposition that "when a client is *forced to settle* a case because of the attorney's negligence, the attorney may not invoke *Muhammad* to preclude the malpractice claim." *Id.* (emphasis in original). The Court also cited *Builders Square, Inc. v. Saraco*, 868 F. Supp. 748 (E.D. Pa. 1994), to explain that a malpractice claim is actionable where the attorney's negligence "depriv[es] his client of an opportunity to settle a case on terms far more favorable than those later available in the circumstances in which the client was placed by the attorney's conduct." 91 F.3d at 448.

In this case, the Complaint clearly alleges that Plaintiff was forced to settle the case from a weak position due to Defendant's negligence. The factual circumstance in *Muhammad*, in which a plaintiff voluntarily approved a settlement and only later became disgruntled, is clearly

---

³In *Stepanuk v. State Farm Mut. Auto. Ins. Co.*, 1995 WL 553010 *2 (E.D.Pa. Sept.19, 1995) (citations omitted), the Court explained that district courts are bound by the prediction of the court of appeals as to state law unless "later state court decisions indicate that the Court of Appeals' earlier prediction was in error." *See also Lennig v. New York Life Ins. Co.*, 130 F.2d 580 (3d Cir. 1942). Defendant has not pointed to any such developments in Pennsylvania law. To the contrary, in *McMahon v. Shea*, 688 A.2d 1179, 1182 (Pa. 1997), the Pennsylvania Supreme Court stated: "the analysis of *Muhammad* is limited to the facts of that case." Even if not bound, this Court agrees with the analysis in *Wassall*.

distinguishable. The settlement of the Franklin case by GNC, the defendant, was based upon the advice of replacement counsel in light of the alternatives at the time. Indeed, GNC arguably had a duty to mitigate its damages by entering into a reasonable compromise and settlement of the claim. *See, e.g., id.* (explaining that the client in *Builders Square* was trying to mitigate effects of attorney's negligence by settling case). Rather than increasing speculation, the settlement with Franklin made GNC's alleged damages actual and concrete. In summary, *Muhammad* is not applicable and settlement of the Franklin case does not bar Plaintiff's malpractice claim.

3. "But For" Causation

In a closely related argument, Defendant contends that Plaintiff is unable to allege the causation required by Pennsylvania law, citing *Kituskie v. Corbman*, 714 A.2d 1027 (Pa. 1998). Defendant reasons that the cost to perform the Franklin contracts was greater than the amount Plaintiff paid to settle the lawsuit, even if counsel fees are considered. Defendant further argues that the alleged error of improperly estimating Plaintiff's exposure did not cause the loss because the damages were a result of the breach of the contract, rather than a result of the erroneous estimate.

The Court adheres to its conclusion that the causation element cannot be determined at the motion to dismiss stage. As an initial matter, the Court must clarify a dispute regarding terminology. The parties have disputed whether Pennsylvania law requires "but for" causation or "proximate" causation. In *Kituskie*, 714 A.2d at 1029-30, the Court made clear that "proximate causation" (not "but for" causation) was an element of a legal malpractice claim. The Court understands that the main thrust of Defendant's argument is not "but for" causation, but rather,

6

the principle stated in *Kituskie* that a plaintiff must prove "actual harm" as opposed to speculative harm or a risk of future loss.[4] While the Court agrees with this legal principle, it concludes that the Complaint adequately alleges actual harm. The complaint alleges that Plaintiff "asked Gardere to provide legal advice regarding whether it could and/or should terminate the Franklin Contracts, and specifically requested that Gardere analyze [Plaintiff's] potential exposure." Complaint ¶ 9. Plaintiff further alleges that it followed Gardere's advice to go "to the mattresses," which resulted in an adverse ruling from the Ohio court. After firing Gardere and receiving an assessment from its new lawyer that there was "a high probability of a materially bad outcome, . . . [Plaintiff] was forced to settle the case and paid a substantial sum to Franklin." Complaint ¶¶ 38-39. The Complaint gives fair notice of Plaintiff's contention that due to Gardere's alleged negligence, Plaintiff was placed in a weak position that caused it to incur damages. It will be Plaintiff's burden to prove a causal connection between Defendant's conduct and its actual damages, and the extent of such damages.[5] Of course, there may be some degree of mathematical imprecision, but that is unavoidable due to the requirement to prove a "case within a case." *Kituskie*, 714 A.2d at 1030. As explained in *Wassall*, the theory that counsel's negligence forced a party to settle from a weak position is clearly cognizable. In sum, the causation element is sufficiently pled. Gardere will have an opportunity to reassert this

---

[4]Defendant's argument that Plaintiff's loss was caused by the breach, rather than the negligent legal advice, sweeps too broadly. Taken to its logical conclusion, Defendant's position would mean that a lawyer is immunized from claims of malpractice with respect to damages.

[5]Comparisons of the costs and benefits of performance of the Franklin contracts, re-negotiation, amicable settlement, or other alternatives to the "to the mattresses" strategy allegedly recommended by Gardere are inherently fact-intensive and unsuitable for disposition at the motion to dismiss stage.

theory of defense at summary judgment, if appropriate, or with the jury at trial.

    4.    Causation – Privity/Distinct Corporations

In another causation-related argument, Defendant contends that Plaintiff has conceded that the legal advice at issue was given to a separate corporation. Specifically, Defendant points to the Complaint, the minutes of a board meeting on October 20, 2005, and the Declaration of Kenneth Fox submitted in response to the Motion to Compel Arbitration. The Fox Declaration asserted that General Nutrition Corporation is distinct and separate from GNC Corporation. The October 20,2005 meeting minutes referenced in the Complaint state that it was a meeting of the GNC Corporation Board (as opposed to Plaintiff) and that it was the GNC Corporation Board that approved the resolution to terminate the Franklin contracts.

Even assuming arguendo that the facts regarding the October 20, 2005 board meeting are correct, the Complaint is not susceptible to dismissal. Defendant has succeeded in casting doubt on only one particular instance in which legal advice was alleged to have been given.[6] Paragraphs 9 and 10 clearly aver that Plaintiff, General Nutrition Corporation, and Defendant entered into an attorney-client relationship and the Complaint alleges that Gardere gave "repeated advice" to Plaintiff. It will be Plaintiff's burden to prove that an attorney-client relationship existed. Full development of the factual record, including the inter-relationship, if any, between General Nutrition Corporation and GNC Corporation, will be necessary prior to resolution of this issue.

---

[6]The Court does not reach Plaintiff's factual argument that it's two board members and four executive officers were also present on October 20, 2005. Nor does the Court reach the impact, if any, of the emails contained in Defendant's supplementation to the record.

5. Statute of Limitations

Gardere argues that the negligence claim is barred by the applicable two-year statute of limitations. Gardere cites several cases for the proposition that the limitations period commences upon the occurrence of the alleged breach of duty. *See, e.g., Wachovia Bank, N.A. v. Ferretti*, 935 A.2d 565, 572 (Pa. Super. 2007). However, as Defendant recognizes, the limitations period is tolled by the discovery rule. *Wachovia Bank* holds that the limitations period is tolled "when the client, despite the exercise of due diligence, cannot discover the injury or its cause." *Id.* at 573. GNC contends that it did not reasonably discover that Gardere's alleged improper advice was the cause of its injury until it received the adverse summary judgment ruling from the Ohio court during the litigation. For example, the amended complaint alleges that even after Franklin provided an expert report from a law professor, Gardere continued to assure GNC that its analysis of GNC's potential liability was correct and covered up its original error. *See* Complaint ¶¶ 18-22, 55.[7] Similarly, the Complaint alleges negligence during the course of the litigation, such as carelessly employing services-like language, agreeing that there were no facts in dispute, and failing to contest affidavits submitted by Franklin. *See* Complaint ¶¶ 31-33. "Reasonable diligence" is an inherently fact-intensive inquiry. Thus, the complaint alleges a valid basis for tolling the limitations period and at this stage the Court cannot determine as a matter of law that Plaintiff's claim is untimely.

---

[7]The Court disagrees that the fiduciary duty claim is inconsistent with Plaintiff's position regarding the statute of limitations. As the Court reads the Complaint, Plaintiff is alleging that Defendant's self-interested decision to hide its earlier error is the reason that Plaintiff was unable to discover that the original advice was negligent.

6. Breach of Contract Claim

Defendant has not raised new arguments on this issue in its supplemental briefing and argument. The Court reiterates its earlier opinion. The complaint contains sufficient allegations to support a contract-based legal malpractice claim, although the tort and contract theories may ultimately be duplicative. The complaint provides adequate notice for Gardere to develop its defenses and Gardere will have an ample opportunity to renew its arguments, if applicable, upon a more fully-developed record. Thus, the Court will not dismiss the breach of contract claim at the motion to dismiss stage.

7. Breach of Fiduciary Duty Claim

Finally, Gardere argues that the breach of fiduciary duty claim should be dismissed because the complaint fails to plead how the duty was breached or how the breach caused actual loss. Defendant argues strenuously that the duty of loyalty is distinct from the duty of due care. While the Court agrees with this basic principle of law, the complaint clearly avers that Gardere knew or should have known that its pre-litigation advice was faulty and that it should have timely disclosed its error to GNC. The complaint also alleges that Gardere's subsequent litigation strategy was motivated by self-interest (i.e., to hide its earlier error) rather than the best interests of GNC and thereby breached the duty of loyalty. The complaint further avers that this alleged failure to disclose the faulty advice caused GNC to be sued by Franklin, to incur legal fees, to be forced into an unfavorable legal position, and to settle the Franklin case. Such allegations are sufficient to defeat the motion to dismiss the breach of fiduciary duty claim.

Conclusion

Defendant has raised numerous legal obstacles which Plaintiff must overcome in order to prevail in this case. However, the Court concludes that the issues raised by Defendant are premature. The Complaint provides fair notice of the grounds for the claims at issue and discovery must be undertaken to determine whether those claims may be proven to be meritorious.

Accordingly, the MOTION FOR RECONSIDERATION (Document No. 28) filed by Defendant Gardere Wynne Sewell, LLP is **DENIED**.

Defendant shall file an Answer on or before October 7, 2008.

SO ORDERED this 23rd day of September, 2008.

BY THE COURT:

s/ Terrence F. McVerry
United States District Court Judge

cc: Dennis St. John Mulvihill, Esquire
Email: dmulvihill@rlmlawfirm.com
Thomas J. Farnan, Esquire
Email: tfarnan@rlmlawfirm.com
Erin J. Fucci, Esquire
Email: efucci@rlmlawfirm.com

David L. Haber, Esquire
Email: dlh@wshpc.com
Amy J. Coco, Esquire
Email: AJC@WSHPC.COM
James R. Schadel, Esquire
Email: JRS@WSHPC.COM