IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **GENERAL NUTRITION CORPORATION,** ) | |
| ) | |
| ) | 2:08-cv-831 |
| **Plaintiff,** ) | |
| **v.** ) | |
| ) | |
| **GARDERE WYNNE SEWELL, LLP.,** ) | |
| ) | |
| **Defendant.** ) | |

**MEMORANDUM ORDER**

Pending before the Court is the MOTION TO COMPEL AND/OR FOR SANCTIONS UNDER F.R.C.P. 37 (Document No. 60), with brief in support, filed by Defendant Gardere Wynne Sewell, LLP ("Gardere"). Plaintiff ("GNC")[1] filed a response in opposition (Document No. 61). Gardere filed a reply and GNC filed a sur-reply (Document Nos. 63, 65). The motions are ripe for disposition.

The gravamen of this case is a claim that Gardere provided improper legal advice to Plaintiff as to the consequences of terminating contracts with Franklin Publications, Inc. ("Franklin") for the production, advertising and targeted delivery of two magazines. Acting on Gardere's allegedly faulty advice, GNC terminated the contracts in the expectation that Franklin's damages, if any, would be limited under the Uniform Commercial Code (UCC) to $1-3 million and that Franklin would be precluded from recovering its lost profits estimated at approximately $34.5 million. Franklin filed suit in an Ohio state court which was removed to the United States District Court for the Southern District of Ohio (the "Ohio court") and Gardere

---

[1]The Court is aware that the acronym "GNC" has been used to describe various distinct corporate entities.

defended the litigation by contending that the contract involved a sale of goods which was governed by the UCC, which did not permit recovery of consequential damages. On July 13, 2007, the Ohio court ruled on summary judgment that the contract predominantly involved the sale of services, such that the UCC did not apply to limit Franklin's damages. After this adverse development, GNC fired Gardere, hired replacement counsel, and paid a substantial sum to Franklin to settle the case. Plaintiff asserts claims against Gardere for negligence, breach of contract, and breach of fiduciary duty. The Court denied Gardere's motion to dismiss and explained that discovery must be conducted to determine whether GNC's claims are meritorious. On June 5, 2009, the Court issued a Memorandum Order to resolve an earlier discovery dispute between the parties.

As an initial matter, the Court notes that the parties have apparently resolved their dispute regarding the Board of Directors meeting minutes. GNC's counsel has reviewed the documents in question and avers that none of them reference the Franklin litigation.

Three other issues must still be resolved. Gardere contends that GNC's responses are inadequate as to: (1) the evidence which Gardere should have discovered; (2) the affidavits Gardere should have submitted; and (3) the economic value of the Franklin contracts. These will be addressed seriatim.

1. Evidence Gardere Should Have Discovered

GNC alleges that Gardere should have performed a more thorough investigation prior to render its advice with respect to the Franklin contracts. In response to Gardere's inquiry in Interrogatory No. 11, GNC provided a list of names of twelve persons that Gardere should have interviewed. Gardere asks that GNC be required to describe with particularity what each person

would have said and how that information would have changed Gardere's conclusion as to whether the contracts were for the sale of goods, so that it can determine whether or not to depose those persons.

GNC responds that it has answered Interrogatory No. 11 as fully as it is capable at this time. GNC further notes that it specified nine facts that an investigation would have revealed and included job titles for nine of the twelve individuals. GNC states that it does not possess individual statements from these individuals. Finally, GNC observes that only two are currently employed by GNC and Gardere has equal access to the other ten individuals.

There is some merit in the position of both sides. The Court appreciates Gardere's desire for additional details beyond a simple list of names and job titles. On the other hand, it would not be reasonable to require GNC to obtain witness statements from each identified individual, particularly for ex-employees to whom Gardere has equal access. Accordingly, the motion to compel will be **GRANTED IN PART**, as follows: GNC shall supplement its response to Interrogatory No. 11 forthwith, to set forth the facts and information that it gleaned from or about each of the twelve individuals, which caused GNC to include each individual on the list, and the extent of the knowledge it expects each such individual to possess and the facts to which they are expected to testify. GNC shall also disclose the current address, telephone number and any other contact information within its control as to each of the listed ex-employees.

2. Affidavits Gardere Should Have Submitted

In Interrogatory No. 14, Gardere sought information regarding "uninformed litigation decisions." Plaintiff's response alleges, in part, that Gardere should have factually responded to

3

affidavits submitted in support of Franklin's motion for summary judgment. Specifically, GNC explained: "Since Gardere has maintained – through deposition testimony – that it correctly concluded the Contracts were for goods, the relevant evidence – i.e. the facts that could have been included in opposing affidavits – must be within the control of Gardere." Gardere asks that GNC be ordered to provide the affiant name(s) and contents of such affidavits or be precluded from contending that Gardere was negligent in not responding to Franklin's summary judgment motion.

GNC contends that it sufficiently answered Interrogatory No. 14, because it stated its intention to rely on expert testimony, identified five specific litigation errors, and explained, in essence, that the facts to support Gardere's opinion that the Franklin contract involved goods should have been in Gardere's possession before it reached that opinion. GNC explains that it has provided all information in its possession and that is premature to preclude it from pursuing any legal theories until discovery is concluded.

The Court concludes that GNC has provided a sufficient response to Interrogatory No. 14. As the Court understands it, GNC is not necessarily contending that Gardere should have filed affidavits. Rather, GNC seeks to present Gardere with a Hobson's choice – either: (1) it possessed factual information that supported its opinion that the Franklin contracts were for goods, in which case GNC will argue that Gardere was negligent for not presenting such information to the Ohio court; or (2) it possessed no such factual information, in which case GNC will argue that Gardere was negligent in forming its legal opinion and in not advising GNC to settle the case from a position of strength. GNC forthrightly concedes that it has no such affidavits but is seeking the information that led Gardere to opine that the contracts were for

4

goods in its own discovery requests. At this stage of the case, GNC's pursuit of these alternative theories is permissible and GNC cannot be compelled to provide information which it does not possess. At the conclusion of discovery, GNC will be required to articulate which theory it has elected to pursue. *See Response Acquisition LLC v. U.S. Steel Corp.,* 2007 WL 3333368 *3 (N.D. Ind. 2007) (election between alternative theories not required during discovery). Accordingly, this aspect of the Motion to Compel is **DENIED**.

      3.      Economic Value of the Franklin Contracts

In Interrogatory No. 20, Gardere seeks the economic value of the Franklin contracts. The Court ordered GNC to reply to this request. GNC's response, in essence, is three-fold: (1) that this will be the topic of expert testimony; (2) that the value of the contracts exceeded the payment of $10 million per year; and (3) that because the Franklin magazines helped drive 50% of GNC's business, their economic value equalled 50% of GNC's sales revenue. Gardere contends that this response is vague and insufficient and that GNC has failed to take a position. Specifically, Gardere asks for clarification of whether GNC is unable to determine the economic value at this point, whether it intends to rely on the testimony of Robert DiNicola and/or whether the economic value will be based on sales data.

In its brief in opposition, GNC states that because the economic value of the Franklin contracts is not simple, it intends to rely on expert testimony. GNC further promises to provide the facts and documents upon which the expert relies during expert discovery. GNC's supplemental response to Interrogatory No. 20 further explained that GNC is currently unaware of any calculation or examination of the economic value of the Franklin contracts and offered to

produce marketing studies, to the extent that they exist.

The Court concludes that GNC's response, combined with the representations in its brief regarding disclosure of the documents considered by its expert, is not sufficient.  GNC has sufficiently apprised Gardere that the economic value of the Franklin contracts will be determined by an expert witness.  However, GNC shall produce to Gardere, forthwith, all of the facts and documents which GNC intends to provide to its damages expert.  GNC shall supplement its production to Gardere contemporaneously with any additional facts or documents that are provided to the damages expert.  In accordance with the foregoing, this aspect of the Motion to Compel is **GRANTED**.

The Court declines to comment on the parties' respective previews of their positions on the merits of the dmages issue.  Nor does the Court rule on which party carries the burden as to various disputed issues.  Such disputes are not yet ripe.


In accordance with the foregoing, the MOTION TO COMPEL AND/OR FOR SANCTIONS UNDER F.R.C.P. 37 (Document No. 60) is **GRANTED IN PART AND DENIED IN PART**.

SO ORDERED this 6th day of October, 2009.

BY THE COURT:

s/  Terrence F. McVerry
United States District Court Judge

cc:   Dennis St. John Mulvihill, Esquire
      Email: dmulvihill@rlmlawfirm.com
      Thomas J. Farnan, Esquire
      Email: tfarnan@rlmlawfirm.com
      Erin J. Fucci, Esquire
      Email: efucci@rlmlawfirm.com

      David L. Haber, Esquire
      Email: dlh@wshpc.com
      Amy J. Coco, Esquire
      Email: AJC@WSHPC.COM
      James R. Schadel, Esquire
      Email: JRS@WSHPC.COM